United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Reginald Early III and others, Plaintiffs, | )<br>)<br>) |
| v. | ) Civil Action No. 18-24260-Civ-Scola |
| | ) |
| City of Homestead, Florida and others, Defendants. | )<br>) |

### Order On Defendants' Motion To Dismiss

This matter is before the Court on Defendant's motion to dismiss counts III-X of Plaintiffs' Second Amended Complaint. (ECF No. 23.) The Plaintiffs responded (ECF No. 26) and the Defendants timely replied (ECF No. 27). Having considered the parties' arguments, the record, and the relevant legal authority, the Court **grants in part and denies in part** the Defendants' motion. (**ECF No. 23**.)

### I. Background

On October 3, 2015, the Plaintiffs were on a family vacation and checked into the Floridian Hotel in Homestead, Florida. (Am. Compl. ¶ 11., ECF No. 22.) According to the Plaintiffs, while in the hotel room, the Defendant police officers (the "Officers") from the City of Homestead Police Department, lacking a warrant or probable cause, entered the Plaintiffs' hotel room and arrested Plaintiffs Mildred Early and Regina Early. (*Id.* ¶¶ 16-28.) Mildred Early had been taking a shower when the police officers arrived. (*Id.* at ¶ 16.) Defendant Meece barged into the bathroom, knocked Mildred over, and threw a towel on her face. (*Id.* at ¶ 19.) She was not allowed to dress and was walked through the hotel property while naked. (*Id.* at ¶ 23.) She was without clothing for at least an hour while male bystanders watched and made comments about her appearance. (*Id.* at ¶¶ 24-26.)

Both women spent the night in Miami-Dade County jail before being bonded out. (*Id.* at ¶ 29.) On March 23, 2016, all criminal charges against Mildred were dismissed. (*Id.* at ¶ 31.) On September 19, 2016, all charges against Regina were dismissed. (*Id.* at ¶ 32.) The Plaintiffs then filed a ten-count complaint alleging claims for false arrest, negligent infliction of emotional distress, illegal search and seizure, battery, malicious prosecution, and other negligence claims against the City of Homestead (the "City") and the Officers stemming from the Early's arrest in October 2015. The Defendants now move to

dismiss counts III-X of the Plaintiffs' complaint and to strike the Plaintiffs' request for declaratory and injunctive relief. (ECF No. 23.)

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). For purposes of Rule 12(b)(6), a court generally may not look beyond the pleadings, which includes any information attached to a complaint. *U.S. ex. Rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (internal citations omitted).

## III. <u>Analysis</u>

### A. Count III – Negligent Infliction of Emotional Distress against the City

Count III of Plaintiffs' complaint is against the City for negligent infliction of emotional distress. (ECF No. 22 at ¶ 43.) According to the Plaintiffs, the Officers' conduct, including the Plaintiffs being "handcuffed, battered, and Mildred Early being forced to expose her nude body to members of the public," resulted in emotional distress, including severe depression, post-traumatic stress disorder, and other physical and mental injuries. (*Id.* at ¶ 46.) The City moves to dismiss Count III because this negligence count is based on the same conduct that forms the basis of the intentional torts asserted in the other counts. (ECF No. 23 at 12.) The Plaintiffs argue that Count III survives because it is not

based only on the Defendants' intentional conduct. (ECF No. 26 at 15.) Upon careful review, the Court agrees with the Plaintiffs.

While the Defendants are correct that the Plaintiffs could not state a cause of action for negligent infliction of emotional distress based on intentional conduct, *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337 (S.D. Fla. 2012) (Moore, J.), a negligence claim "based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for [an intentional tort]." *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996). The court in *Sanders* held that "the negligence component must pertain to something other than the actual application of force during the course of the arrest. It cannot serve as the exclusive basis for liability in an excessive force claim." *Id.* Here, the Plaintiff's claim for negligent infliction of emotional distress appears to include intentional conduct as well as potentially negligent conduct. The handcuffing and battery relate to the intentional torts asserted throughout the complaint but forcing Mildred Early to walk around naked in public forms a separate basis to assert a count for negligent infliction of emotional distress. Accordingly, the Court denies the Defendants' motion to dismiss Count III.

### B. Counts IV and IX – 42 U.S.C. § 1983 Claims Against the City

Counts IV and IX assert § 1983 claims against the City for failure to "train its officers to uphold basic civil rights during an arrest." (ECF No. 26 at 6.) Municipalities and other local government entities are subject to liability under § 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or other local government entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis in original). Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cty. Sheriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009) (citing *Depew v. City of*

*St, Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986)). The practice or custom must be "so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). For example, if a municipality's rules and regulations for the operation of its police department are repeatedly violated and the municipality has knowledge of the conduct but fails to rectify the situation, it may be liable. *Depew*, 787 F.2d at 1499 ("The continued failure of the [municipality] to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983."). However, "[n]ormally random acts or isolated incidents are insufficient to establish a custom or policy." *Id.*

The inadequacy of police training may serve as the basis for local government liability under § 1983 only "where the failure to train in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). To establish "deliberate indifference," "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for the purposes of failure to train." *Guzman v. City of Hialeah*, No. 15-23985, 2016 WL 3763055, at *4 (S.D. Fla. July 14, 2016) (Gayles, J.) (citations and quotations omitted).

Dismissal of a § 1983 failure-to-train claim is warranted where a plaintiff fails to include "allegations of specific facts setting forth: (1) the nature of any inadequate policies or procedures; (2) the factual basis – other than that this incident occurred – for concluding that the City's training is contrary to law; (3) the identity of any prior incidents which would have placed the City on notice of any policy or training deficiencies; and/or (4) the factual basis underlying assertions that the City employed incompetent officers." *Willis v. City of Coral Springs*, No. 16-60959, 2016 WL 3747611, at *4-5 (S.D. Fla. July 13, 2016) (Bloom, J.) (citations omitted). Here, the complaint includes a few cursory allegations in support of the Plaintiffs' failure-to-train § 1983 claims. The Plaintiffs' conclusory allegations state that the City "failed to properly train its employees to avoid violation of citizen's rights." (ECF No. 22 at ¶¶ 50, 84.) These "failures equate to an official policy, practice or custom, sufficient upon which to state a claim[.]" (*Id.* at ¶¶ 51, 85.) The complaint contains no specific factual allegations to support these conclusions.

The Plaintiffs argue that they do not need to include allegations related to previous incidents or a pattern of similar constitutional violations because the

need to train in this particular area is "so obvious that the liability attaches for a single incident." (ECF No. 26 at 6 (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 (11th Cir. 2015)).) According to the Plaintiffs, "it is obvious that officers should be trained on the rights of citizens to be arrested absent the denial of basic civil rights and liberties, including, but not limited to the avoidance of unnecessary nudity." (*Id.*) The Court disagrees. In *Weiland*, for example, the Eleventh Circuit held that the need for specialized training in the area of the use of excessive force when dealing with the mentally ill was not "so obvious" that "liability attaches for a single incident." 792 F.3d at 1329. To describe what is considered "obvious," the Supreme Court has posed the "hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick v. Thompson*, 563 U.S. 51, 63 (2011). While training officers in the area of lawful arrests is obvious, the Court does not find that the need for training in the area of arresting people while they are potentially taking a shower to avoid public nudity is "so obvious" that liability attaches for this single incident. Accordingly, Counts IV and IX against the City are dismissed.

### C. Counts V, VI, and IX – 42 U.S.C. § 1983 Claims Against the Officers

Counts V, VI, and IX assert § 1983 claims against the individual Officers for false arrest (Count V), illegal search (Count VI), and malicious prosecution (Count IX). Any person who deprives another "of any rights, privileges, or immunities secured by the Constitution and laws," while acting under color of state law, is liable to the person whose rights were violated. 42 U.S.C. § 1983. This law "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985).

The individual Defendants argue that they are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). To claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). "A court must ask whether the act complained of, if done for proper purpose, would be within, or reasonably related to the outer perimeter of an official's discretionary duties." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). Once it is established that a public official was acting in a discretionary capacity, the burden shifts to the

plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 526 (11th Cir. 2010). At the motion to dismiss stage, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotations and citations omitted).

The Plaintiffs argue that "where the Defendant's conduct has run so afoul of the rules of decency and accepted behaviors, [ ] the concept of discretionary authority is irrelevant." (ECF No. 26 at 7.) This analysis misstates the two-prong analysis of qualified immunity. First, the Defendants must establish that the officer was acting in his discretionary capacity and then the plaintiff must establish that the officer violated the plaintiff's rights in violation of clearly established law. Whether the Defendant's conduct was indecent or unacceptable informs the second part of the test.

The Court finds that the Defendants were acting within their discretionary authority. The Officers were performing legitimate job-related functions as they were investigating a noise complaint and carrying out arrests. *See Hall v. Stewart*, 297 F. Supp. 2d 1328, 1331 (S.D. Fla. Jan. 16, 2004) (Moore, J.) ("there can be no doubt that [the officers] were acting within the scope of their discretionary authority when they arrested Plaintiffs."). The burden then shifts to the Plaintiffs.

The Plaintiffs must establish (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Id.* "[T]he standard is not whether preexisting law provides a set of materially similar facts, but whether the state of the law at the time in question gave the defendants fair warning that their alleged conduct was unconstitutional." *Id.* (citations and quotations omitted).

With regard to the false arrest claim, an officer must establish that he had "arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Valdes v. Miami-Dade County*, No. 12-22426, 2013 WL 5429938, at *14 (S.D. Fla. Sept. 27, 2013) (Moreno, J.). Here, Plaintiffs allege that they were in their hotel room while Plaintiff Reginald Early was resting on the bed, the family's young children were watching television, and Plaintiff Mildred Early was taking a shower. (ECF No. 22 at ¶¶ 15-16.) The officers banged on the door and told the Plaintiffs to "get the f*** out" because someone had complained about them. (*Id.* at ¶ 17.) They dragged Plaintiff Mildred from the bathroom and arrested Mildred and Regina

Early. (*Id.* at ¶¶ 27-28.) "These allegations, taken as true and construed in the light most favorable to [Plaintiffs], vitiates the Officers' contention that they had arguable probable cause to arrest [Plaintiffs]." *Valdes*, 2013 WL 5429938 at *14. Accordingly, the motion to dismiss Count V is denied.

With regard to Count VI, illegal search of the Plaintiffs' hotel room, the complaint alleges that "entry into Plaintiffs' hotel room was absent probable cause or any legal right." (ECF No. 22 at ¶ 58.) The Court finds that the Plaintiffs have failed to meet their burden to overcome the Defendants' claim of qualified immunity. It is not clear from the face of Plaintiffs' complaint that the Officers violated the Plaintiffs' constitutional rights. *See Heine v.* Rice, No. 00-cv-2297-T24-TBM, 2001 WL 1338780, at *8 (M.D Fla. April 9, 2001). To satisfy their burden, the Plaintiffs' argument would have required an analysis of Fourth Amendment law related to illegal searches, an analysis of whether the Plaintiffs consented to the Defendants' entry into their hotel room, whether the consent was voluntary, and if any potential violation of the Fourth Amendment was clearly established. *See, e.g., Higgins v. Gee*, No. 06-cv-1928-T-27MSS, 2008 WL 190493 (M.D. Fla. Jan. 22, 2008). The Plaintiffs provide no such analysis nor address the Defendants' entry and search of the hotel room. (*See* ECF No. 26 at 7-13.) Accordingly, the motion to dismiss Count VI is granted.

Count IX, addressed above, also asserts a claim for malicious prosecution against the Officers. "To stablish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234 (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).

> Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Deegan v. Aquino*, No. 16-22820, 2018 U.S. Dist. LEXIS 30466, at *32-33 (S.D. Fla. Feb. 23, 2018) (Lenard, J.). The Defendants only challenge the Plaintiffs' allegations of malice. (ECF No. 23 at 14-16.) Malice, however, can be "inferred

from a lack of probable cause[.]" *Phillips v. City of West Palm Beach*, No. 18-80172, 2018 WL 3586179, at *8 (S.D. Fla. July 26, 2018) (Bloom, J.). Based on the Court's holding that the Defendants lacked probable cause to arrest the Plaintiffs under Count V, the Court holds that the Plaintiffs have established malice at the motion to dismiss stage. *See N.C. v. Alonso*, No. 12-61646, 2013 WL 6564217, at *10 (S.D. Fla. Dec. 13, 2013) (Rosenbaum, J.) ("[L]egal malice is sufficient and may be inferred from, among other things, a lack of probable cause."). Accordingly, the Court denies the Defendants' motion to dismiss Count IX as to the Officers.

### D. Counts VII and VIII – Common Law Battery and Malicious Prosecution Claims Against All Defendants

Count VII asserts a cause of action for battery against all Defendants. The Defendants only move to dismiss Count VII as to the Officers based on their sovereign immunity under Florida Statutes § 768.28 and because the complaint only alleges one incident of touching by one officer. (ECF No. 23 at 11, 13.) The Defendants first argue that the Plaintiffs cannot maintain a claim for battery against both the City and the Officers at the same time. (ECF No. 23 at 11.) This argument "misses the mark . . . The nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a government entity and its employees. *Valdes*, 2013 WL 5429938 at *5. The Court will not dismiss Count VII based on this argument.

The Defendants also argue that the Plaintiffs cannot establish a waiver of immunity where they fail to allege facts sufficient to support a claim of malice. (ECF No. 23 at 12.) As discussed above, an inference of malice can be drawn from a lack of probable cause. *Alonso*, 2013 WL 656421 at *10. The Court finds that the Plaintiffs have sufficiently alleged malice at the motion to dismiss stage.

Lastly, the Defendants argue that Plaintiff's allegations state only that Officer Meece entered the bathroom and removed Plaintiff Mildred. (ECF No. 22 at ¶ 20.) The complaint, however, also alleges that Plaintiffs Mildred and Regina Early were "grabbed and handcuffed excessively tightly." (*Id.* at ¶ 64.) The Defendants take issue with this general allegation because it does not specify which Officers took these actions against which Defendants. The Court agrees with the Defendants. A claim for battery under Florida law requires a showing that the defendant acted intending to cause harmful or offensive contact with the plaintiff or an imminent apprehension of such contact. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996). The Court cannot analyze the Officer's conduct or the alleged battery without knowledge of which Officer took what actions against which Plaintiffs. *See Mendoza v. City of Hialeah*, No. 17-21790, 2017 WL 4737262, at *4 (S.D. Fla. Oct. 18, 2017) (Scola, J.) ("Since the

Complaint only specifically alleges intentional affirmative conduct by Defendant Holland, Count Three is dismissed as to Defendants Morgado and Cabrera."). Accordingly, Count VII is dismissed against Officers Leal, A. Pearce, and B. Pearce.

Count VIII asserts a claim for common law malicious prosecution against all Defendants. (ECF No. 22 at 14.) The Defendants argue that the Plaintiffs' malicious prosecution claim fails because they have failed to allege that the Officers acted with malice. As discussed above, malice can be implied from a lack of probable cause. *Alonso*, 2013 WL 656421 at *10. Accordingly, the Court denies the Defendant's motion to dismiss Count VIII.

### E. Count X – Negligent Training, Supervision, and Retention against the City

Count X asserts a state law negligence claim against the City for negligent training, retention, and supervision. (ECF No. 22 at 16.) The complaint alleges that the "negligent failure of the Defendant City to supervise, train, and negligently retain its agents, employees, officers, and servants was a direct causal link, caused, or was closely related to the illegal acts against the Plaintiffs referenced above." (*Id.* at ¶ 89.) The State of Florida and its municipalities are generally immune from tort liability. *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (citing Fla. Const., Art. X, § 13). Although Florida has waived immunity "under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant," Fla. Stat. § 768.28(1), this waiver does not apply if the challenged acts were discretionary. *Kaisner v. Kolb*, 543 So.2d 732, 736 (Fla. 1989) (citations omitted); *Whitaker v. Miami-Dade Cty.*, 126 F. Supp. 3d 1313, 1330 (S.D. Fla. 2015) (Lenard, J.) ("Florida's sovereign-immunity waiver does not apply when the challenged acts are 'discretionary' rather than 'operational.'") (citations omitted).

Here, the Plaintiffs have failed to include any specific factual allegations to support their conclusory allegations that the City failed to appropriately train, retain, and supervise its Officers. Therefore, the Plaintiff has failed to state a claim under Count X. *See, e.g.*, *Gelbard v. City of Miami, Fla.*, 845 F. Supp. 2d 1338, 1341 (S.D. Fla. 2012) (Martinez, J.) (dismissing negligent training claim against municipality because the complaint failed to "allege any specific training or subject matter that Defendant failed to provide to its police force."). Moreover, the Eleventh Circuit has held that "[a] city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning," and claims challenging such decisions are barred. *Lewis*, 260 F.3d at 1266 (leaving open the possibility, however, that a plaintiff could challenge the

implementation or operation of a police training program); *see also Gelbard*, 845 F. Supp. 2d at 1341 (holding that claim that city negligently failed to train its police officers involved a discretionary function and, therefore, the city was immune from liability). Therefore, to the extent that the Plaintiffs are attempting to challenge the City's decisions regarding what subject matter to include in the training of its police officers, the City is immune from such a claim. Accordingly Count X is dismissed.[1]

### F. Motion to Strike Requests for Declaratory and Injunctive Relief

The Defendants move to strike the Plaintiffs' requests for declaratory and injunctive relief found at the end of each count in the complaint. "[A] prayer for injunctive and declaratory relief requires an assessment, at this stage in the proceeding, of whether the plaintiff has sufficiently shown a real and immediate threat of future harm." *Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006). The Plaintiffs' complaint "makes no such showing." *Kelly v. Owens*, No. 05-cv-1150-MHT, 2006 WL 3450142, at *5 (N.D. Ala. Nov. 29, 2006). The charges against the Plaintiffs have been dropped and there is no evidence that they have suffered an ongoing harm that must be enjoined by the Court. To the extent the Plaintiffs argue that their injury is a "direct result of a policy or custom" that will continue, the Court previously found that Plaintiffs failed to allege a police practice or custom under its § 1983 claims. Therefore, the Court strikes the Plaintiffs' requests for declaratory and injunctive relief found throughout the complaint.

### IV. Conclusion

Based on the foregoing, the Court **grants in part and denies in part** the Defendants' motion to dismiss. The Court grants the following relief:
1. The Court **denies** the Defendants' motion to dismiss **Count III**.
2. The Court **grants** the Defendants' motion to dismiss **Count IV.**
3. The Court **denies** the Defendants' motion to dismiss **Count V.**
4. The Court **grants** the Defendants' motion to dismiss **Count VI**.
5. The Court **grants** the Defendants' motion to Dismiss **Count VII** as to Defendants Leal, A. Pearce, and B. Pearce.
6. The Court **denies** the Defendants' motion to dismiss **Count VIII**.

---

[1] Count X is also a shotgun pleading as it includes three distinct theories of liability (negligent training, supervision, and retention). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018). The Court may, in its discretion, dismiss a complaint on shotgun pleading grounds. *Id.* at 1295.

7. The Court **grants** the Defendants' motion to dismiss **Count IX** as to the City but **denies** the motion as to the Officers.
8. The Court **grants** the Defendants' motion to dismiss **Count X**.
9. The Court **strikes** the Plaintiffs' requests for declaratory and injunctive relief found throughout the complaint.

**Done and ordered** at Miami, Florida, on July 12, 2019.

Robert N. Scola, Jr.
United States District Judge