United States District Court
for the
Southern District of Florida

| Reginald Early III and others, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-24260-Civ-Scola |
| | ) | |
| City of Homestead, Florida and | ) | |
| others, Defendants. | ) | |

### Order On Defendants' Motion for Summary Judgment

This matter is before the Court on Defendants' motion for summary judgment. (ECF No. 50.) The Plaintiffs responded (ECF No. 62) and the Defendants timely replied (ECF No. 69). Having considered the parties' arguments, the record, and the relevant legal authority, the Court **grants** the Defendants' motion. (**ECF No. 50**.)

### I. Relevant Facts

On October 3, 2015, the Plaintiffs were on a family vacation and checked into the Floridian Hotel in Homestead, Florida. (Am. Compl. ¶ 11., ECF No. 22.) At approximately 12:23 a.m., Homestead Police Dispatch received a 911 call from the Floridian Hotel's security guard, Nelson Cruz. (Defendants' Statement of Facts ("Def. SOF"), ECF No. 49 at ¶ 1.) Cruz reported that there was a disturbance at the hotel with a drunk female. (*Id.* at ¶ 2.) The female guest was disturbing the other guests and there was an altercation with someone in the hallway of the second floor. (*Id.* ¶ 3.) Cruz said the problematic guests were in room 206. (*Id.*) Officer Meece, Officer Leal, and Officer Pearce (the "Officers") arrived on the scene. (*Id.* at ¶ 5.) The Officers spoke to Cruz and he informed them that one of the females causing the disturbance had been nude in the public areas of the hotel. (*Id.* at ¶ 6.) Cruz informed Officer Meece that they "needed to leave the hotel." (*Id.* at ¶ 7.)

Prior to knocking on the Plaintiffs' hotel door, Officer Meece heard loud talking or arguing coming from the room. (*Id.* at ¶ 9.) The Officers knocked on the door and Plaintiff Regina Early opened it. (*Id.* at ¶ 8, 10.) The Officers observed Plaintiff Reginald Early on the bed near the window. (*Id.* at ¶ 11.) The Officers also observed Plaintiff Mildred Early in the back of the hotel room, near the bathroom, without any clothes on. (*Id.* at ¶ 12.) Officer Meece informed Regina that they had caused a disturbance and the Floridian Hotel no longer wished to entertain them as guests. (*Id.* at ¶ 14.) Officer Meece and Officer Pearce observed Mildred and Regina to be intoxicated. (*Id.* at ¶ 16.) Officer Meece

ordered them to leave immediately. (*Id.*) The Plaintiffs refused to leave the hotel upon Officer Meece's notice that they were not longer welcome at the hotel. (*Id.* at ¶ 15.)

Approximately five to six minutes after the Officers told the Plaintiffs that they had to leave the hotel, the Officers entered the hotel room. (*Id.* at ¶ 21.) Officer Leal entered the hotel room bathroom and requested that Mildred get out of the bathtub and get dressed. (*Id.* at ¶ 22.) Officers Leal and Pearce placed Mildred under arrest by bringing her out of the bathroom and placing her on the bed to handcuff her. (*Id.* at ¶ 23.) Mildred was then wrapped in a sheet at the first available moment, escorted downstairs, and placed in a police car. (*Id.* at ¶ 24.) Both Mildred and Regina were arrested and transported to the Homestead Police Department. (*Id.* at ¶ 26.)

Officer Meece authored the arrest reports and incident reports for Mildred and Regina. (*Id.* at ¶ 28.) The Officers did not communicate with the State Attorney's Office regarding the charges filed against Mildred and Regina. (*Id.* at ¶ 29.) Regina signed a pretrial diversion agreement, in which she agreed to complete a pretrial diversion program in exchange for a *nolle prosse* of the charges. (*Id.* at ¶ 30.)

The Plaintiffs do not admit or deny the Defendants' statement of facts. Instead, they present their own version of the facts. According to the Plaintiffs, Mildred and Regina did not have an altercation with anyone at the hotel. (ECF No. 62 at ¶ 1.) They also never consumed alcohol. (*Id.* at ¶ 5.) When the Officers arrived at their hotel room, they told the Plaintiffs to "get the fuck out." (*Id.* at ¶ 10.) The Officers never explained that the Plaintiffs had to leave the hotel. (*Id.* at ¶ 11.)

The Officers barged into the bathroom while Mildred was taking a bath. (*Id.* at ¶ 12.) Officer Leal handcuffed Mildred while she was fully naked. (*Id.* at ¶ 13.) The Plaintiffs contest the Defendants' assertions that Mildred was only naked for a few minutes. (*Id.* at ¶ 17.) Officer Pearce testified that he could not recall having heard yelling before the Officers knocked on the hotel door. (*Id.* at ¶ 18.) The Officers never identified any witnesses or victims of any alleged altercation at the hotel. (*Id.* at ¶ 19.)

## II. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson*

*Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### III. <u>Analysis</u>

As a preliminary matter, the Court will address the Plaintiffs' failure to comply with Local Rule 56.1. Local Rule 56.1(a) states that "[s]tatements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant . . . Additionally facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts[.]" The Rule goes on to state that "all material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b). "[I]t is the nonmovant's obligations to specifically bring the factual dispute to the court's attention by rebutting the movant's factual statements on a paragraph by paragraph basis and with specific citations to the record." *Joseph v. Napolitano*, 829 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012) (Goodman, Mag. J.).

The Defendants filed a Statement of Undisputed Facts in support of their motion for summary judgment, which consists of 32 numbered paragraphs with citations to the record. (ECF No. 49.) In response, the Plaintiffs did not file a corresponding statement of undisputed facts to rebut, on a paragraph-by-paragraph basis, the Defendants' statement of facts. Instead, the Plaintiffs' response to the Defendants' motion includes a "Background" section which recounts their version of the facts. (ECF No. 62 at ¶¶ 1-21.) The Plaintiffs' facts span a total of 22 paragraphs.

"When, as here, a responding party fails to comply with Local Rule 56.1 and the moving party's statement of undisputed facts is therefore deemed admitted, a district court is to disregard or ignore evidence relied on by the respondent—but not cited in the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statements." *Garmley v. Cochran,* 651 F. App'x 933, 937 (11th Cir. 2016) (citations and quotations omitted). Accordingly, "[b]ecause Plaintiff[s] did not contradict Defendant[s'] statement of undisputed facts and because Defendant[s'] statements are supported by evidence in the record, the facts alleged in the defendant[s'] statements are deemed admitted." *Joseph*, 839 F. Sup. 2d at 1329.

"[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Reese v. Herbert,* 527 F.3d 1253, 1269 (11th Cir. 2008). Accordingly, the Court will review the Defendants' citations to the record to ensure that the movants have carried their burden on summary judgment. The Court will not credit the facts asserted by the Plaintiffs.

### A. Count I – False Arrest Against the City

The City first moves for summary judgment on Count I for false arrest arguing that the Officers had probable cause to arrest Plaintiffs Mildred and Regina Early. (ECF No. 50 at 3.) The City puts forth three different theories under which the Officers had probable cause. Because the first theory is supported by the record, the Court will not address the other two.

"The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Williams v. City of Homestead, Fla.*, 206 F. App'x 886, 886 (11th Cir. 2006). "Probable cause exists if at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect has committed or was committing an offense." *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) (quoting *Holmes v. Kucynda,* 321 F.3d

1069, 1079 (11th Cir. 2003)). "Probable cause is evaluated from the viewpoint of a prudent, cautious police officer on the scene at the time of the arrest." *Id.* (citations omitted). "The test is an objective one, i.e. a probable cause determination considers whether the objective facts available to the officer at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Id.* (citations omitted).

The City argues that the Officers had probable cause to arrest based on the Defendant's violation of Fla. Stat. § 509.141. Section 509.141(1) provides that:

> The operator of any public lodging establishment or public food service establishment may remove or cause to be removed from such establishment, in the manner hereinafter provided, any guest of the establishment who, while on the premises of the establishment, illegally possesses or deals in controlled substances as defined in chapter 893 or is intoxicated, profane, lewd, or brawling; who indulges in any language or conduct which disturbs the peace and comfort of other guests or which injures the reputation, dignity, or standing of the establishment[.]

If a guest remains at such establishment after a request that he leave, he is "guilty of a misdemeanor of the second degree[.]" § 509.141(3), Fla. Stat. And the "operator of such establishment may call upon any law enforcement officer of this state for assistance. It is the duty of such law enforcement officer, upon the request of such operator, to place under arrest and take into custody for violation of this section any guest who violates subsection (3) in the presence of the officer." § 509.141(4), Fla. Stat.

Based on the facts in the record, the hotel security guard called 911 requesting police assistance because intoxicated guests from Room 206 were causing a disturbance, including a guest who was running around without clothes on. (ECF No. 49 at ¶¶ 1-4.) The security guard informed Officer Meece that the guests had to leave. (ECF No. 48-6 at 13:24-14:3.) Officer Meece knocked on the Plaintiffs' hotel room door and informed them that they were no longer welcome at the hotel as guests. (*Id.* at 14:22-15:13.) The Officers observed Mildred without clothes on. (*Id.* at 15:17-18.) The Officers also observed Mildred and Regina to be intoxicated. (ECF No. 48-4 at 42-43.) The Plaintiffs refused to leave the hotel upon Officer Meece's notice. (ECF No. 48-8 at 124:8-13.) The Officers arrested Mildred and Regina and removed them from the hotel. (ECF No. 49 at ¶¶ 21-26.)

The Court finds that, based on the uncontroverted facts on the record, the security officer informed the Officers that there was a disturbance and the Plaintiffs must leave the hotel. The Officers informed the Plaintiffs they must leave and observed that one of the female guests was naked and the two women appeared intoxicated. This corroborated the security guard's initial 911 call. Based on the security officer's call and their own interactions with the Plaintiffs, the Officers had probable cause to arrest the Plaintiffs for refusing to leave the hotel in violation of Section 509.141.

### B. Count II – Invasion of Privacy Against the City

The City moves for summary judgment on Count II for invasion of privacy arguing that the Plaintiffs lost their expectation of privacy when the hotel asked them to leave. (ECF No. 50 at 8.) The Plaintiffs respond by arguing that the Defendant has failed to establish that the Plaintiffs lost their expectation of privacy because the Plaintiffs never refused to leave and the hotel was required to refund any fees paid in advance to the hotel at the time they were asked to leave. (ECF No. 62 at 10-11.) The Plaintiffs provide no citations to the record or caselaw in support of these arguments. (*Id.*)

"A hotel or motel room is the private dwelling of the occupant so long as he is legally there, has paid or arranged to pay rent, and has not been requested by the management to leave." *Wassmer v. State*, 565 So. 2d 856, 857 (Fla. 2d DCA 1990). A hotel room's protected status under the Fourth Amendment "does not outlast the guest's right to occupy the room." *Green v. State*, 824 So. 2d 311, 314 (Fla.1st DCA 2002). Because the Defendant has established that the hotel wanted the Plaintiffs to leave and the Officers asked them to leave, ECF No. 49 at ¶¶ 7-15, the Plaintiffs had no expectation of privacy in their hotel room. And there is no requirement in § 509.141 that the hotel must reimburse the guests at the time of the termination of occupancy.[1] Accordingly, summary judgment is granted as to Count II.[2]

---

[1] Section 509.141(4) states that the hotel must "refund any unused portion of moneys paid by such guest for the occupancy of such premises." The record also establishes that the Plaintiffs eventually received their money back for the hotel room. (ECF No. 49 at ¶ 27.)

[2] The Plaintiffs' amended complaint also asserts that Mildred Early "had an expectation of privacy with regard to her right to not be subjected to involuntary nudity." (ECF No. 22 at ¶ 42.) The Florida Supreme Court, however, has held that the tort of invasion of privacy does not include the privacy of body parts. *See Allstate Ins. Co. v. Ginsberg,* 863 So. 2d 156, 162 (Fla. 2003) (intrusion into one's private quarters refers to a "place in which there is a reasonable expectation of privacy and is not referring to a body part").

### C. Count III – Negligent Infliction of Emotional Distress Against the City

The City next moves to dismiss Count III for negligent infliction of emotional distress arguing that there was no physical impact as required for the tort of negligent infliction of emotional distress. Upon careful consideration, the Court agrees.

"Under Florida law, the so-called impact rule generally requires that before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress must flow from physical injuries the plaintiff sustained in an impact." *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1277 (S.D. Fla. 2013) (Lenard, J.). If there is no direct physical impact, the "complained-of mental distress must be manifested by physical injury[.]" *Id.* Here, the Plaintiff does not argue that Mildred's mental distress has manifested in a physical injury. Instead, the Plaintiff's claim is based on the fact that the Officers forced Mildred to walk around naked while they were arresting her. (ECF No. 62 at 13.) There is no evidence, however, that she suffered a physical injury from this incident. *See Mistretta v. Volusia Cty. Dept. of Corrections,* 61 F. Supp. 2d 1255, 1266 (M.D. Fla. 1999) (holding that even if pushing constitutes a physical impact, "the plaintiff cannot succeed on his claim because there is no demonstrable physical injury"). Accordingly, summary judgment is granted as to Count III.

### D. Counts V, VI, and IX – 42 U.S.C. § 1983 Claims Against the Officers

Counts V, VI, and IX assert § 1983 claims against the individual Officers for false arrest (Count V), illegal search (Count VI), and malicious prosecution (Count IX). The individual Defendants argue that they are entitled to qualified immunity. (ECF No. 50 at 18.) "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quotation marks omitted). To claim qualified immunity, a public official must first establish that he was engaged in a "discretionary duty." *Mercado v. City of Orlando,* 407 F.3d 1152, 1156 (11th Cir. 2005). "A court must ask whether the act complained of, if done for proper purpose, would be within, or reasonably related to the outer perimeter of an official's discretionary duties." *Mikko v. City of Atlanta,* 857 F.3d 1136, 1144 (11th Cir. 2017). Once it is established that a public official was acting in a discretionary capacity, the burden shifts to the plaintiff to establish "both that the defendant committed a constitutional violation and that the law governing

the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 526 (11th Cir. 2010).

The Court finds that the Defendants were acting within their discretionary authority. The Officers were performing legitimate job-related functions as they were investigating a noise complaint and carrying out arrests. *See Hall v. Stewart*, 297 F. Supp. 2d 1328, 1331 (S.D. Fla. Jan. 16, 2004) (Moore, J.) ("there can be no doubt that [the officers] were acting within the scope of their discretionary authority when they arrested Plaintiffs."). The burden then shifts to the Plaintiffs.

The Plaintiffs must establish (1) that a constitutional right was violated and (2) that the constitutional right was clearly established at the time the official acted. *Id.* "[T]he standard is not whether preexisting law provides a set of materially similar facts, but whether the state of the law at the time in question gave the defendants fair warning that their alleged conduct was unconstitutional." *Id.* (citations and quotations omitted).

With regard to the false arrest claim (Count V), an officer must establish that he had "arguable probable cause, that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Valdes v. Miami-Dade County*, No. 12-22426, 2013 WL 5429938, at *14 (S.D. Fla. Sept. 27, 2013) (Moreno, J.). As discussed above, the Court has found that probable cause existed to arrest Plaintiffs. "[T]he existence of such probable cause defeats both the federal and state claims" for false arrest. *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).

With regard to Count VI, illegal search of the Plaintiffs' hotel room, the Defendants argue that the Plaintiffs' claim must fail because they did have a reasonable expectation of privacy in their hotel room. (ECF No. 50 at 21.) The court agrees. "[A]n individual's Fourth Amendment rights are *not* infringed—or even implicated—by a search of a thing or place in which he has no reasonable expectation of privacy." *United States v. Ross*, 941 F.3d 1058, 1064 (11th Cir. 2019) (emphasis in original). As reasoned above, the Plaintiffs lost their expectation of privacy once they were informed that they were no longer welcome as guests. *See Green*, 824 So. 2d at 314 (Fla.1st DCA 2002) (holding that a hotel room's protected status under the Fourth Amendment "does not outlast the guest's right to occupy the room."). Accordingly, the Court grants the Defendant's motion as to Count VI.

Count IX asserts a claim for malicious prosecution against the Officers. To establish a federal malicious prosecution claim, the plaintiff must show the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the

plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim." *Id.* "Probable cause exists when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed an offense." *Id.* (citations and quotations omitted).

As the Court has already found probable cause with regard to the false arrest claim, the Court finds that probable cause also defeats the Plaintiffs' claim of malicious prosecution. Here, the Defendant Officers received reasonably trustworthy information from the security officer, that was then corroborated by their observations. The Plaintiffs refused to leave the hotel after being informed that the hotel no longer welcomed them. Accordingly, there was probable cause to believe that the Plaintiffs violated Fla. Stat. § 509.141. The Court grants summary judgment as to Count IX.

### E. Counts VII and VIII – Common Law Battery and Malicious Prosecution Against the City and Officers

Count VII asserts a cause of action for battery against all Defendants. The Court previously dismissed Count VII as to Officers Leal, A. Pearce, and B. Pearce. (ECF No. 32 at 9.) The remaining Defendants, Officer Meece and the City, now move for summary judgment as to Count VII arguing that there is no evidence that Officer Meece touched Mildred. (ECF No. 50 at 15.)

A battery is defined as "the intentional infliction of a harmful or offensive contact upon the person of another." *Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1322 (S.D. Fla. 2012) (Jordan, J.) (citations and quotations omitted). Police officers, however, "receive a presumption of good faith in Florida, and they are liable for battery only if they use excessive force when making a lawful arrest." *Id.* "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* at 1323.

With regard to Mildred's arrest, the testimony on the record confirms that Officer Meece had no contact with Mildred. (ECF No. 48-6 at 19-20.) Mildred was arrested by Officer Leal. (ECF No. 48-9 at 38.) Absent physical contact, Plaintiff Mildred Early cannot assert a claim for battery against Officer Meece. And to the extent that Regina also asserts a battery claim against Officer Meece based on his conduct during her arrest, "an alleged battery that was committed incident to arrest does not give rise to an independent tort." *Ainsworth v. Norris*, 469 F. App'x 775, 777 (11th Cir. 2012). There is no evidence on the record to suggest

that Officer Meece's conduct rose to the level of excessive force. Accordingly, the Court grants summary judgment as to Count VII.[3]

Count VIII asserts a claim for common law malicious prosecution against all Defendants. (ECF No. 22 at 14.) The Defendant Officers move for summary judgment as to Count VIII arguing that probable cause defeats the Plaintiffs' malicious prosecution claim. The elements of the common law tort of malicious prosecution are:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*Paez v. Mulvey*, 915 F.3d 1276, 1291 (11th Cir. 2019). Like the Plaintiffs' federal malicious prosecution claim, a finding of probable cause defeats this claim. *Id.* at 1292. Accordingly, because the Court has found that the Defendants had probable cause to arrest the Plaintiffs with regard to the § 1983 claim, the Plaintiff's common law malicious prosecution claim also fails. *See id.* ("For the same reasons the complaint has failed to make a § 1983 malicious prosecution claim, it also fails to plausibly allege a state common law malicious prosecution claim.").

Lastly, the Court also grants summary judgment as to the City because the essential element of malice bars this claim. Under Section 768.28(9), the City "shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose[.]" "The very need to allege and prove malicious conduct to sustain an action against an employee makes the case non-actionable against a State agency." *Maffei v. City of Fort Lauderdale*, No. 05-61140, 2005 WL 8054580, at *2 (S.D Fla. Sept. 19, 2005) (Huck, J.) (cleaned up).

---

[3] The Court grants summary judgment in favor of the City on the same grounds.

**IV.     Conclusion**

Based on the foregoing, the Court **grants** the Defendants' motion for summary judgment. (**ECF No. 50.**) The Clerk is directed to **close** this case. All pending motions, if any, are **denied** as moot.

**Done and ordered** at Miami, Florida, on December 6, 2019.

_____
Robert N. Scola, Jr.
United States District Judge